

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>YOUSIF H. HALLOUM,<br><br>                Debtor(s).<br>_____<br>YOUSIF H. HALLOUM, et al.,<br><br>              Plaintiff(s),<br>v.<br><br>HILTON A. RYDER, et al.,<br><br>              Defendant(s).<br>_____ | Case No. 12-21477-C-7<br><br>Adversary No. 15-2091<br><br>DC Nos. MLG-1 and DIK-5<br><br><br>FILED <br><br>AUG 2 7 2015<br><br>UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF CALIFORNIA |

**MEMORANDUM DECISION ON MOTIONS MLG-21 AND DIK-5**

This adversary proceeding was originally filed by Yousif ("Joe") H. Halloum and Iman Y. Halloum in the Superior Court of California, County of San Francisco, on February 13, 2015, as case number CGC-15-544168. It seeks redress for the loss of the plaintiffs' business as the result of a bankruptcy case pending in this court.

The defendants are: Hilton A. Ryder; McCormick, Barstow, Sheppard, Wayte & Carruth ("McCormick Barstow"); David I. Katzen; Katzen & Schuricht; Scott H. McNutt; Michael C. Abel; McNutt Law Group; Alan Scott Koenig; and Michael G. Kasolas, individually and as Chapter 7 trustee; and Does 1-25.

Plaintiff Yousif Halloum is the debtor in the voluntary bankruptcy case No. 12-21477, U.S. Bankruptcy Court, Eastern

District of California, filed January 26, 2012, as a Chapter 11 case and converted to Chapter 7 on February 12, 2014.

Defendant Ryder, a partner in defendant law firm McCormick Barstow, was counsel to the debtor, who acted as debtor-in-possession performing the duties of the trustee until defendant Kasolas was appointed to act as Chapter 11 trustee on November 22, 2013. Defendant Kasolas became the Chapter 7 trustee upon the conversion to Chapter 7.

Defendants Katzen, a partner in defendant law firm Katzen & Schuricht, and defendant Koenig are attorneys who represent the financial institution, Bank MidWest, that was the plaintiff's principal adversary in the bankruptcy case.

Defendants McNutt and Abel, partners in defendant law firm McNutt Law Group, are counsel who represent dfendant Kasolas in the bankruptcy case.

The action filed in the state court was removed by defendant Kasolas from the state court pursuant to 28 U.S.C. § 1452(a) as an adversary proceeding to the U.S. Bankruptcy Court for the Northern District of California.

The U.S. Bankruptcy Court for the Northern District of California thereafter transferred the adversary proceeding pursuant to 28 U.S.C. § 1412 to the U.S. Bankruptcy Court for the Eastern District of California.

## Adversary Proceeding Complaint

The complaint in the adversary proceeding contains a 12-page allegation of facts that focus exclusively on the conduct of the bankruptcy case and the actions of the defendants in the

1  bankruptcy case.  The factual allegations are followed by five
2  causes of action.
3      The first cause of action is for legal malpractice against
4  defendant Ryder.
5      The second cause of action is for breach of contract against
6  defendant Ryder.
7      The third cause of action is for civil conspiracy against
8  defendants, Ryder, McCormick Barstow, Katzen, and Katzen &
9  Schuricht.
10     The fourth cause of action is for civil conspiracy against
11 all defendants.
12     The fifth cause of action is for intentional interference
13 with prospective economic advantage against all defendants.
14
15                         Procedural History
16     All defendants filed motions for summary judgment.  This
17 court ordered an evidentiary hearing at which the plaintiffs were
18 directed to present all their evidence in support of their claims
19 and to identify aspects that require discovery.
20     That evidentiary hearing was consolidated with the
21 evidentiary hearing necessitated by the decision of the
22 Bankruptcy Appellate Panel in, <u>Halloum v. McCormick, Barstow,</u>
23 <u>Sheppard, Wayte & Carruth</u>, No. EC-14-1219, filed May 19, 2015,
24 vacating this court's order on the final fee application of
25 defendants Ryder and his law firm and remanding for findings of
26 fact so that it could better assess the merits of plaintiff
27 Yousif Halloum's objections to that fee award.  That fee
28 application is a contested matter governed by Federal Rule of

Bankruptcy Procedure 9014.

In other words, the hearing was simultaneously a trial of a contested matter regarding the remanded fee dispute and an evidentiary hearing regarding the plaintiffs' case in the adversary proceeding.

The evidentiary hearing was held on August 12 and 13, 2015. Plaintiff Yousif Halloum testified and was cross-examined in his adversary proceeding case in chief and offered no other witnesses. Plaintiff Iman Halloum elected not to testify. Fee applicant and defendant Hilton Ryder testified regarding the fee application and was cross-examined by Mr. Halloum, whose testimony in the adversary proceeding case in chief also applied to his case in opposition to the fees.

The court announced its findings of fact and conclusions of law orally on the record pursuant to Federal Rule of Civil Procedure 52(c), <u>incorporated by</u> Federal Rule of Bankruptcy Procedure 7052 and 9014, on August 25, 2015.

This memorandum decision supplements the findings of fact and conclusions of law. To the extent that there may be an open summary judgment question (as to which formal findings of fact are not in order), it operates as the court's alternative decision.

<u>Procedure Regarding Adversary Proceeding</u>

Under Civil Rule 52(c), if a party has been fully heard on an issue during a nonjury trial and if the court finds against the party on that issue, it is appropriate for the court to make findings of fact and conclusions of law and to enter a judgment

on partial findings. Fed. R. Bankr. P. 52(c), <u>incorporated by Fed. R. Bankr. P. 7052</u>.

The adversary proceeding entails a nonjury trial notwithstanding that the complaint contains a jury demand. The plaintiffs are not entitled to trial by jury. Each of them invoked bankruptcy jurisdiction. Plaintiff Yousif Halloum did so when he filed the chapter 11 case. Plaintiff Iman Halloum invoked bankruptcy jurisdiction when she came into the bankruptcy court to enforce her rights under 11 U.S.C. § 363(i) and managed to cause the trustee's sale to the purchaser to be delayed. <u>Langenkamp v. Culp</u>, 498 U.S. 42, 44 (1990); <u>Hickman v. Hana (In re Hickman)</u>, 384 B.R. 832, 836-40 (9th Cir. BAP 2008) (act of filing bankruptcy case disentitles debtor to jury trial).

There was ample notice that the evidentiary hearing would be subject to Civil Rule 52(c). The court repeatedly referred to the rule in open court.

The court instructed the plaintiffs to prepare and present all of their evidence at the evidentiary hearing and to identify additional evidence that they believe would be able to be established through discovery. The plaintiffs did present all their evidence.

The only concrete request to permit discovery by the plaintiffs was by subpoena to the FDIC for the notes of the bank examination that led to the FDIC's seizure and takeover to the bank (defendant Bank MidWest's predecessor) that made the original loan to the plaintiffs. They believe that such information would establish an animus on the part of Bank MidWest. This court concludes that such information would be

beyond the scope of discovery as not being reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1), <u>incorporated by</u> Fed. R. Bankr. P. 7026. Even if relevant, any such evidence would be cumulative because there is ample evidence in the record of the reluctance of Bank MidWest to have any further dealings with the plaintiffs and of its outright distrust of the plaintiffs.

Nor does the addition of Doe defendants 1-25 affect the analysis. Doe pleading is not recognized in federal practice. The Doe defendants are being dismissed.

Hence, the debtors have been fully heard within the meaning of Civil Rule 52(c).

<u>Procedure Regarding Fee Application</u>

The procedure regarding the fee application is straightforward. As the Bankruptcy Appellate Panel explained in its May 19 memorandum decision, an opposed fee application is a contested matter subject to Rule 9014 in which the court is required to make findings of fact and conclusions of law sufficient to give the appellate court a clear understanding of the basis of the trial court's decision. BAP Slip Op. at 10.

The evidentiary hearing included the full trial of the fee application contested matter. The final fee application and all the interim fee applications, accompanied by all billing records, were introduced in evidence. The fee applicant testified and was cross-examined by the objector.

There was no challenge to the amount of time billed or to the billing rates charged. Rather, the objector focused on his

contentions that his counsel had been disloyal, committed legal malpractice, breached his contract, and conspired against the debtor.

## Merits of the Fee Application

This court has made comprehensive findings of fact and conclusions of law regarding the fee application by Mr. Ryder and McCormick Barstow in which it considered all of the points raised by the debtor in his objection and by the debtor in the relevant evidence regarding fees. Those findings, which are memorialized in a separate order (Order on Remand from Bankruptcy Appellate Panel, filed August 26, 2015, Docket #943), lead to the conclusion that Mr. Ryder was retained on an hourly basis and that his full fee request constitutes reasonable compensation for actual, necessary services to the estate under all applicable standards of 11 U.S.C. § 330(a).

## Trustee

It is settled law that a trustee may be sued only with leave of the court that appointed the trustee. Barton v. Barbour, 104 U.S. 126, 128 (1881); Beck v. Ft. James Corp. (In re Crown Vantage, Inc.), 421 F.3d 963, 970-71 (9th Cir. 2005).

The plaintiffs' action against Mr. Kasolas filed in the state superior court alleges only activity associated with the stewardship by Mr. Kasolas of the bankruptcy estate. Accordingly, the assertion that he is being sued in his individual capacity in addition to his capacity as trustee is a transparent sham not made in good faith and is stricken.

- 7 -

Case 15-02091   Filed 08/27/15   Doc 191

1   This court did not grant permission to sue the trustee. End
2   of analysis. The action against Mr. Kasolas is dismissed.

## Preemption

The adversary proceeding is based on the manner in which the defendants acted during the bankruptcy case. The complaint is self-consciously one that seeks damages for what the various defendants did in the case in this bankruptcy court. As such, the claims asserted are completely preempted by the structure and purpose of the Bankruptcy Code.

The Ninth Circuit has explained in exhaustive detail the various state-law claims asserted in the complaint. <u>MSR Exploration, Ltd. v. Meridian Oil, Inc.</u>, 74 F.3d 910, 912-16 (9th Cir. 1996) ("<u>MSR</u>").

Bankruptcy is a matter of exclusive federal jurisdiction. Congress has expressed its intent to have only a federal forum by placing jurisdiction over bankruptcy cases exclusively in federal court. 28 U.S.C. § 1334(a). <u>MSR</u>, 74 F.3d at 913.

The complex, detailed, and comprehensive provisions of the Bankruptcy Code indicate the intention of Congress to create a whole system under federal control to bring together and adjust all the rights and duties of creditors and debtors in a manner that makes it unlikely that Congress meant to permit state remedies to be superimposed on activities taken in the management of the bankruptcy process. <u>MSR</u>, 74 F.3d at 914.

Bankruptcy law inherently requires uniformity among the states, which persuaded the framers of the United States Constitution to make an express grant of the power to establish

uniform laws on the subject of bankruptcies throughout the United States. U.S. Cons., Art. I, § 8, cl. 4; MSR, 74 F.3d at 914.

There are numerous remedies in the Bankruptcy Code that are pertinent to the plaintiffs' dissatisfaction. An attorney for a debtor in possession can be stripped of fees if the counsel represents an interest adverse to the estate. 11 U.S.C. § 328(c). An attorney can be forced to disgorge compensation that exceeds the reasonable value of services. 11 U.S.C. § 329(b). Claims can be disallowed. 11 U.S.C. § 502. The trustee's bond can be surcharged. 11 U.S.C. § 322. A creditor who rejects a plan not in good faith can have its rejection disregarded. 11 U.S.C. §§ 1126(c)-(e). Collusive sales are subject to damages, costs, and fees. 11 U.S.C. § 363(n). The court has authority to enforce or implement court orders or rules or to prevent an abuse of process. 11 U.S.C. § 105(a). These and other remedies in the Bankruptcy Code and Federal Rules of Bankruptcy Procedure preempt state-law remedies. MSR, 74 F.3d at 915.

The Ninth Circuit has found complete preemptions of California state-law actions for malicious prosecution, negligence, defamation, false light, abuse of process, intentional and negligent infliction of emotional distress, and negligent misrepresentation. Miles v. Okun (In re Miles), 430 F.3d 1083, 1086 (9th Cir. 2005); MSR, 74 F.3d at 916; Gonzales v. Parks, 830 F.2d 1033, 1035-36 (9th Cir. 1987).

This adversary proceeding is completely preempted.

The Substantive Causes of Action

To the extent the adversary proceeding might be regarded as not preempted, the plaintiffs have been fully heard on all of counts and findings of fact and conclusions of law have been rendered orally on the record.

Plaintiff Yousif Halloum made a well-organized presentation divided into seventeen items, backed by exhibits for each item. He testified in accordance with that presentation.  This court made its findings tracking the points and the logic of that presentation in which plaintiff Yousif Halloum told his story his way.

The following discussion covers the same ground and supplements the oral findings but does so tracking the five causes of action alleged in the complaint.

First Cause of Action: Legal Malpractice

As this court explained in its oral findings, it does not perceive any breach of duty by defendant Ryder and, accordingly, finds against the plaintiff, who has been fully heard, on this cause of action.

In addition, this court's separate determination on the contested fee application (Order on Remand from Bankruptcy Appellate Panel, filed August 26, 2015, Dkt. #943) operates under the rules of res judicata to preclude the malpractice action for precisely the same reasons that District Judge Breyer concluded that fee determinations by bankruptcy courts operated to preclude a separate legal malpractice action.  Shaw v. Replogle (In re Shaw), 2000 Westlaw 1897344, at *5 - *7 (N.D. Cal. 2000); accord,

Potter v. Pierce, 342 P.3d 54, 57-61 (N.M. 2015).

Plaintiff Yousif Halloum will have full and fair opportunity to obtain appellate review of the separate order that has been entered on remand reinstating the original fee award.

In short, the plaintiffs having been fully heard pursuant to Rule 52(c) on this count, the court finds against them.

## Second Cause of Action: Breach of Contract

As this court explained in its oral findings, defendant Ryder did not breach the Attorney-Client contract.

Plaintiff Yousif Halloum's argument that there was a fixed fee contract is based on an incorrect factual premise. The statement included with the schedules to satisfy Rule 2016(b), on which the assertion is premised, does not operate to create a contract and is perfectly consistent with the actual contract, which was on a retainer basis calling for hourly compensation. The actual retainer agreement signed by both plaintiff Yousif Halloum and defendant Ryder is in evidence. More important, this court's order authorizing the employment called for hourly "lodestar" compensation and not a fixed fee.

To the extent there has been a breach of contract, it is a breach by plaintiff Yousif Halloum in unjustifiably repudiating the retainer agreement.

In short, the plaintiffs having been fully heard pursuant to Rule 52(c) on this count, the court finds against them.

Third Cause of Action: Civil Conspiracy

As this court explained in its oral findings, there is no credible evidence that any of the alleged conspiratorial agreements existed. Rather, the record establishes that defendant Ryder and the defendant counsel for Bank MidWest were working at arm's length throughout the case and without any design to prolong the case.

This court is persuaded that the problems in reaching agreement lay with the clients. Bank MidWest developed a deep-seated and visceral mistrust of the debtor. And the debtor was abnormally intransigent.

The debtor takes great umbrage at defendant Ryder's suggestion to counsel for Bank MidWest that the bank's nondischargeability action could be allowed to remain on the books after confirmation of a chapter 11 plan as a "stick" to assure performance of the plan. The choice of the word "stick" may have been inelegant and unfortunate, but this type of arrangement as an incentive to promote performance of a confirmed plan is a reasonable and common way to defuse the enmity of a mistrustful creditor.

While the debtor does not believe that he had any duty to disclose to Bank MidWest's predecessor bank that his financial difficulties occasioning the need for additional credit was the result of losses on the order of $500,000 in stock market speculation that were funded by the debtor's business, the allegations of implied misrepresentation to that effect in the adversary proceeding complaint by the bank had sufficient merit that it was not likely that the complaint would, as the debtor

- 12 -

assumes, have been dismissed out of hand by this court. In that context, the suggestion by defendant Ryder to the bank's counsel that the adversary proceeding could remain on the books to be subsumed within the bankruptcy discharge if the debtor successfully completed a confirmed plan of reorganization.

The debtor's refusal to consider the proposal had a material and deleterious effect on the progress of the case. In short, responsibility for the impasse in the case lies with the intransigence of the debtor himself.

Nor does the refusal of defendant Ryder to seek to equitably subordinate the claim of Bank MidWest pursuant to 28 U.S.C. § 510(c) suggest a conspiracy. When USbank conceded that it had an incorrectly perfected security interest in the carwash located at the plaintiffs' business premises, that did not automatically mean that the value of the carwash (which was considerably less than the $450,000 asserted by the plaintiffs) was unencumbered. Rather, the after-acquired property clause in Bank MidWest security agreement operated to included the carwash. Defendant Ryder declined to seek equitable subordination of Bank MidWest because he did not perceive the type of misconduct necessary to amount to a meritorious case warranted by existing law.

In short, the plaintiffs having been fully heard pursuant to Rule 52(c) on this count, the court finds against them.

## Fourth Cause of Action: Civil Conspiracy

As this court explained in its oral findings, there is no credible evidence of any agreement, express or implied, by any or all of the defendants to loot the estate and destroy the business

- 13 -

after the trustee was appointed.

The fate of the case was still in plaintiff Yousif Halloum's hands. The concessions that were necessary to achieve a consensual plan were not great. Defendant Kasolas, when first appointed as Chapter 11 trustee with instructions to evaluate whether a plan was possible, opined that there was reason to believe that a plan could be agreed upon. He made clear that success could be achieved only with the cooperation of plaintiff Yousif Halloum. The tragedy of this case is — and it is a genuine tragedy because it did not have to happen — that the requisite cooperation was not forthcoming. Instead, Mr. Halloum fixated on his theory that defendant Ryder had breached a fictional fixed fee agreement and conspired with the adversary.

When this court converted the case to chapter 7, it made clear that it could be reconverted if a consensual plan was agreed upon. When such a plan was not forthcoming, it reluctantly authorized the trustee to liquidate the assets.

In short, the plaintiffs having been fully heard pursuant to Rule 52(c) on this count, the court finds against them.

Fifth Cause of Action: Intentional Interference
with Prospective Economic Advantage

As this court explained in its oral findings, there is no evidence that this court, as trier of fact, believes to support the allegations that the defendants sabotaged the efforts of plaintiff Iman Halloum to obtain funding to exercise her right to purchase pursuant to 11 U.S.C. § 363(i).

Hearsay correspondence that is tendered by the plaintiffs,

- 14 -

and admitted into evidence as Ex. Q-1 without objection despite its hearsay status, to support the assertion that financing was in place to accomplish the purchase does not make the case.  The August 2, 2014, letter of John Arno, who apparently was acting as intermediary with the proposed lender, indicates that the trustee did grant access to the proposed lender's environmental engineer.  That letter also makes clear that a condition of the loan was proof that plaintiff Iman Halloum had $550,000 cash available from "family funds" to complete the purchase.  The letter purports to attach proof that such funds were available.

Mr. Arno in Ex. Q-1 expresses puzzlement about "what possibly motivated the Lender not to proceed, when by all other indications at the time, the Lender was ready to make the loan, subject to minimal conditions set out at the top of page 2 in the attached document."

Although the plaintiffs infer that the only likely explanation is interference by the defendants, there is a more plausible explanation.

The bank account statements attached to demonstrate the availability of $550,000 cash that were part of the "minimal conditions" do not add up to $550,000 and, in this court's experience are too variable to inspire confidence in any lender considering making a $1.8 million loan.

There is a statement of account from USbank of an account owned by Salwa M. Halloum or Haitham Y. Halloum showing a balance of $19,308.49 as of April 11, 2014, and of a USbank account in the name of Esam Halloum showing a balance of $191,834.20 as of April 17, 2014 (showing a wire transfer deposit of $190,481.70

from "Habib Amer nyc" on April 7, 2014). The total at USbank was $209,790.19.

In addition, there are two statements of account from the National Bank of Abu Dhabi, Al Ain Mall Branch. An account in the name of Haitham Yousif Halloum opened December 3, 2014, shows a current balance as of April 17, 2014, in the amount of 875,350.00 United Arab Emirates Dirham ("AED"). The other account in the name of Esam Yousif Halloum, opened February 19, 2014, shows a current balance as of April 17, 2014, of 106,333.00 AED. The total is 981,683 AED.

At current exchange rates, 981,683 AED is less than $268,000.

The total amount of family funds identified in the bank statements placed in evidence was less than $478,000. As this was less than the lender's requirement of $550,000 to be made available by the family and relied on the doubtful assumption that the family members would hand over all of their funds to the plaintiffs, it is no wonder that a lender would elect not to proceed.

In short, the plaintiffs having been fully heard pursuant to Rule 52(c) on this count, the court finds against them.

### Summary Judgment Analysis

To the extent that it is necessary to analyze the pending motions on summary judgment standards, this court is persuaded that, taking facts in the light most favorable to the nonmoving party, there is no <u>genuine</u> issue of material fact remaining for trial and the movants (all defendants have now joined the

motions) are entitled to judgment as a matter of law.

The dominant feature of the present situation is that the putative issues of fact under the plaintiffs' conspiracy theory are not <u>genuine</u> issues.

If it were to be concluded that there is a jury-trial right, no rational jury could find in favor of the plaintiffs.

\*\*\*

Appropriate orders will issue.

Dated:   August 27, 2015.

_____
UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Yousif H. Halloum
111 Silver Could Pl
Danville CA 94526

Scott H. McNutt
219 9th Street
San Francisco CA 94103

Hilton A. Ryder
7647 N. Fresno Street
Fresno CA 93720

Scott M. Reddie
PO Box 28912
Fresno CA 93729-8912